IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COREY TWIGG AND LORI TWIGG,** :<br>**HUSBAND AND WIFE** :<br>135 Sydney Street :   Civil Action No.<br>Montoursville, PA 17754 :<br>               Plaintiffs, :<br>:<br>     vs. :<br>**VARSITY BRANDS HOLDING CO., INC.** :<br>14460 Varsity Brands Way :<br>Farmers Branch, TX 75244   and :<br>:<br>**BSN SPORTS, INC.** :<br>14460 Varsity Brands Way :<br>Farmers Branch, TX 75244   and :<br>:<br>**SPORT SUPPLY GROUP, INC.** :<br>14460 Varsity Brands Way :<br>Farmers Branch, TX 75244   and :<br>:<br>**SPARTAN ATHLETIC COMPANY** :<br>1310 Egypt Road, Suite 255 :<br>Oaks, PA 19456          and :<br>:<br>**GARWARE TECHNICAL FIBERS, LTD.** :<br>**d/b/a GOLD MEDAL ATHLETIC PRODUCTS** :<br>Plot No 11, Block D1, M.I.D.C, :<br>Chinchwad, Pune – 411019, :<br>Maharashtra, India. :<br>:<br>              Defendants :| |

      The Plaintiffs, Corey Twigg and Lori Twigg, husband and wife ("Plaintiffs"), residing at 135 Sydney Street, Montoursville, Pennsylvania 17754, by way of Complaint bring this action for strict liability and negligence for catastrophic injuries and damages, including but not limited to the surgical amputation ('Enucleation') of Plaintiff's right eye, arising from a defective and unreasonably dangerous product designed, manufactured, marketed and sold by the Defendants. In support thereof, Plaintiffs aver:

**JURISDICTION**

1. Federal jurisdiction exists pursuant to 28 U.S.C. § 1332 because the Plaintiffs are residents of a different state from the Defendants and because the value of the matter in controversy exceeds $75,000.00.

2. This Court has personal jurisdiction over each of the Defendants pursuant to the Pennsylvania Long-Arm Statute, 42 Pa.C.S.A. §5322. Defendants transact business within the Commonwealth of Pennsylvania, and Defendants committed tortious acts and omissions in Pennsylvania. Defendants' tortious acts and omissions caused injury to Plaintiff in the Commonwealth of Pennsylvania. Defendants have purposefully engaged in the business of developing, manufacturing, publishing information, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, athletic products and equipment including Polyethylene safety Netting in Pennsylvania, for which they derived significant and regular income. The Defendants reasonably expected that their defective safety netting products, including Polyethylene, would be sold and implanted in Pennsylvania.

**VENUE**

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which this claim is based occurred in Pennsylvania's Eastern District.

**PARTIES**

4. Plaintiff Corey Twigg is, and was, at all relevant times, a citizen and resident of the Commonwealth of Pennsylvania and the United States residing therein at 135 Sydney Street Montoursville, Pennsylvania 17754.

5. Plaintiff Lori Twigg is, and was, at all relevant times, a citizen and resident of the Commonwealth of Pennsylvania and the United States residing therein at 135 Sydney Street Montoursville, Pennsylvania 17754.

6. Defendant Varsity Brands Holding Co., Inc., is a corporation in Texas, and according to its website, is a factory direct supplier of a diverse selection of athletic and sporting equipment, with its principal place of business located at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.

7. Defendant BSN Sports Inc. is a corporation in Texas, and according to its website, is a factory direct supplier of a diverse selection of athletic and sporting equipment, with its principal place of business located at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.

8. Defendant Sport Supply Group Inc., is a corporation in Texas, and according to its website, is a marketing company which advertises a diverse selection of athletic and sporting equipment, with its principal place of business located at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.

9. Defendant Spartan Athletic Company, LLC is a limited liability company registered and domiciled in the Commonwealth of Pennsylvania, and according to its website, is a supplier of sports and athletic equipment with a registered address of 34 Buckwalter Road, Audubon Pennsylvania 19403.

10. Defendant Garware Technical Fibers LTD. d/b/a Gold Medal Athletic Products is believed and alleged to be an international manufacturer of athletic products and equipment, including athletic safety netting used in the sport of baseball, with a registered international address of Plot No 11, Block D1, M.I.D.C, Chinchwad, Pune – 411019, Maharashtra, India.

**STATEMENT OF FACTS**

11. Plaintiffs incorporate all previous allegations of this Complaint as if fully set forth hereinafter.

12. Defendant Varsity Brands organizes its subsidiary businesses into individual Business Units to coordinate the development, manufacture, testing, marketing promotion, training, distribution and sale of its products, including but not limited to, athletic safety netting products. Within Varsity Brands there are multiple sectors that are "Business Units" including "BSN Sports Inc.," and "Sport Supply Group Inc.".

13. Defendants BSN Sports Inc. and Sport Supply Group Inc. are wholly owned subsidiaries of Defendant Varsity Brands, and are licensed to conduct business in the Commonwealth of Pennsylvania.

14. BSN Sports Inc. and Sport Supply Group Inc., were charged by Varsity Brands to develop, promote, market, test, distribute and sell a diverse product line of athletic equipment and products at issue in this case to institutional clients including youth organizations and school districts.

15. Defendant Varsity Brands, directly and/or through the actions of BSN Sports Inc. and Sport Supply Group Inc., at all pertinent times has been responsible for the research, development, testing, manufacture, production, marketing, promotion, distribution and/or sale of Polyethylene safety netting used in the sport of baseball to protect pitchers from harm during batting practice.

16. All Defendants are individually, jointly and severally liable to Plaintiffs for damages suffered by Plaintiff arising from Defendants' design, manufacture, marketing, labeling, distribution, sale and placement of its defective polyethylene safety netting products at issue in

the instant action, effectuated directly and indirectly through their respective agents, servants, employees and/or owners, all acting within the course and scope of their representative agencies, services, employments and/or ownership.

17. Defendants are vicariously liable for the acts and/or omissions of its employees and/or agents who were at all times relevant hereto acting on behalf of Defendants and within the scope of their employment or agency with Defendants.

18. At all times relevant hereto, this case or controversy arose out of a workplace accident that occurred on or about March 10, 2019, at or near 700 Mulberry Street, Montoursville, Pennsylvania 17754.

19. As of March 10, 2019, Plaintiff Corey Twigg was employed by the Montoursville Area School District as a sixth-grade teacher and assistant baseball coach for the Montoursville Area High School, when he was injured while pitching indoor batting practice.

20. At time of his injury, Twigg was throwing indoor batting practice at an auxiliary gym while seated behind a Collegiate L-Screen W/Hood covered with a Polyethylene safety net that was supplied by a contract between Montoursville School District and Defendants.

21. Defendants manufactured, designed, sold, and/or distributed the Polyethylene safety net and Collegiate L-Screen W/Hood, under item number BS47720.

22. Defendants were involved in the manufacture, sale, distribution, and/or otherwise placed in the stream of commerce the subject the Polyethylene safety net and Collegiate L-Screen was defectively designed and/or manufactured, was not reasonably safe for its intended use to protect users, and the risks of the design outweighed any potential benefits associated with the design. As a result of the defective design and/or manufacture of the Polyethylene safety net and Collegiate L-Screen there was an unreasonable risk of severe injury.

23. At all times relevant hereto, Defendants manufactured and/or distributed and/or was the retail seller of the Polyethylene safety net and Collegiate L-Screen W/Hood, item number BS47720.

24. Prior to the sale and distribution of the subject Polyethylene safety net and Collegiate L-Screen—and before the product left Defendants' possession—Defendants knew or should have known that the subject athletic products were not fit for its intended purpose and posed a hazard to persons using it.

25. Before the subject Polyethylene safety net and Collegiate L-Screen left the control of Defendants, there existed a practical and technically feasible alternative design that would have prevented the harm suffered by the Plaintiff, without otherwise substantially impairing the reasonably anticipated or intended function of the product.

26. Prior to the sale and distribution of the subject Polyethylene safety net and Collegiate L-Screen, Defendants knew or should have known that the subject athletic products did not include all necessary safety features to render it safe.

27. Plaintiff Corey Twigg suffered serious and life-altering injuries as a result of the dangerous and defective condition of the subject product.

28. The Polyethylene safety netting at issue is marketed and promoted as being safe.

29. Defendants knew or should have known the Polyethylene safety netting was not fit for its intended purpose prior to introducing it into the stream of commerce.

30. When the multi-layer Polyethylene safety netting is disrupted and/or degrades, the polypropylene is exposed and can break down causing fraying that allows for a dangerous and defective condition.

31. These manufacturing and design defects associated with the Polyethylene safety netting were directly and proximately related to the injuries suffered by Plaintiff Corey Twigg.

32. Plaintiffs were not adequately warned or informed by Defendants of the defective and dangerous nature of Polyethylene safety netting.

33. The Polyethylene safety netting and Collegiate L Screen herein failed to reasonably perform as intended. The Polyethylene safety netting degraded and allowed a baseball to rip through the safety netting striking Plaintiff Corey Twigg directly in the right eye causing serious and devastating injury which necessitated Plaintiff's eye to be surgically removed via invasive surgery ('Enucleation') and necessitated additional physical and emotional trauma.

34. Plaintiff Corey Twigg's severe injuries were directly and proximately resulted from the defective and dangerous condition of Defendants products and Defendants defective and inadequate warnings about the risks associated with the product, and the frequency, severity and duration of such risks.

35. Plaintiff Corey Twigg has suffered, and will continue to suffer, both physical injury and pain and mental anguish, permanent and severe scarring and disfigurement, lost wages and earning capacity, and has incurred substantial medical bills and other expenses, resulting from the defective and dangerous condition of the products and from Defendants' defective and inadequate warnings about the risks associated with the products.

36. As a further result of the aforesaid incident, Plaintiff, Corey Twigg, has been obliged to receive and undergo medical attention and care and to incur various and diverse expenses, all of which the Plaintiff may continue to expend and incur for an indefinite time into the future.

37. As a further result of the aforesaid incident, Plaintiff, Corey Twigg, has or may suffer a severe loss of his earnings and impairment of his earning capacity and power, all of which may continue indefinitely into the future.

38. As a further result of the aforesaid incident, the Plaintiff, Corey Twigg, has suffered severe physical pain and trauma, mental upset and anguish and humiliation and may continue to suffer the same for an indefinite time into the future.

39. As a further result of the aforesaid incident, the Plaintiff, Corey Twigg, has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

## FIRST COUNT—STRICT PRODUCT LIABILITY: MANUFACTURING DEFECT AND DESIGN DEFECT

40. Plaintiffs incorporate herein by reference the allegations in all prior paragraphs as if fully set forth herein.

41. The Polyethylene safety net and Collegiate L-Screen at issue herein were defectively manufactured and designed. As described above, there was an unreasonable risk that the product would not perform safely and effectively for the purposes for which it was intended, and Defendants failed to design against such dangers, and failed to provide adequate warnings and instructions concerning these risks.

42. Defendants expected and intended the Polyethylene safety net and Collegiate L-Screen products to reach users such as Plaintiff in the condition in which the product was sold.

43. The use of the Polyethylene safety net and Collegiate L-Screen in the manner described herein was a type of use that Defendants intended and foresaw when it manufactured, designed, and sold the product.

44. The Polyethylene safety net and Collegiate L-Screen at issue herein, was designed, manufactured, marketed, promoted and intended as a barrier to protect the user from being struck with a baseball during batting practice. The degradation of the un-weathered Polyethylene safety net exposed a defect in the structural integrity of the Polyethylene netting material, and inevitably led to a dangerous condition ripe with a cascade of adverse consequences.

45. The Polyethylene netting was dangerous and defective, particularly when used in the manner intended by Defendants which when used by the Plaintiff herein failed to reasonably perform as intended.

46. As a direct and proximate result of the defective and unreasonably dangerous condition of the product, Plaintiff suffered injuries and damages as summarized herein.

## SECOND COUNT—STRICT PRODUCT LIABILITY:

## FAILURE TO WARN

47. Plaintiffs incorporate by reference all prior allegations of this Complaint the same as if set fully forth hereinafter.

48. The warnings and instructions provided by Defendants for the Polyethylene safety net and Collegiate L-Screen were inadequate and defective. As described above, there was an unreasonable risk that the product would not perform safely and effectively for the purposes for which it was intended, and Defendants failed to design and/or manufacture against such dangers, and failed to provide adequate warnings and instructions concerning these risks.

49. Defendants expected and intended the Polyethylene safety net and Collegiate L-Screen product to reach users such as Plaintiff in the condition in which the product was sold.

50. Plaintiff, Corey Twigg, and similarly situated users were unaware of the defects and dangers of the Polyethylene safety net and Collegiate L-Screen, and were unaware of the frequency, severity and duration of the defects and risks associated with the products.

51. Defendants' Instructions for Use provided with the Polyethylene safety net and Collegiate L-Screen expressly understates and misstates the risks known to be associated specifically with the Polyethylene safety netting. Additionally, Defendants provided no warning to retailers and end users about the risks or increased risks specifically associated with the unique design of the Polyethylene safety net and Collegiate L-Screen.

52. Defendants' Instructions for Use for the Polyethylene safety net and Collegiate L-Screen failed to adequately warn of numerous risks which Defendants knew or should have known were associated with the degradation of the Polyethylene safety netting.

53. If Plaintiff had been properly warned of the defects and dangers of the Polyethylene safety net and Collegiate L-Screen, and of the frequency, severity and duration of the risks associated with the degradation and fraying of the polyethylene material, Plaintiff would not have been caused to suffer severe and permanent injuries.

54. As a direct and proximate result of the inadequate and defective warnings and instructions, Plaintiff suffered injuries and damages as summarized herein.

**THIRD COUNT—**

**NEGLIGENCE**

55. Plaintiffs incorporate by reference all prior allegations of this Complaint the same as if fully set forth hereinafter.

56. Defendants had a duty to use reasonable care in designing, testing, inspecting, manufacturing, packaging, labeling, marketing, distributing, and preparing written instructions and warnings for the Polyethylene safety net and Collegiate L-Screen, but failed to do so.

57. Defendants knew, or in the exercise of reasonable care should have known, that the Polyethylene material was defectively and unreasonably designed and/or manufactured, and was unreasonably dangerous and likely to injure users. Defendants knew or should have known that Plaintiff was unaware of the dangers and defects inherent in the Polyethylene safety netting material.

58. As a direct and proximate result of Defendants' negligence in designing, testing, inspecting, manufacturing, packaging, labeling, marketing, distributing, and preparing written instructions and warnings for the Polyethylene safety net and Collegiate L-Screen, Plaintiff suffered injuries and damages as summarized herein.

## FOURTH COUNT—
## LOSS OF CONSORTIUM

59. Plaintiffs incorporate by reference all prior allegations of this Complaint the same as if fully set forth hereinafter.

60. At all times, relevant hereto, Plaintiff, Lori Twigg, is the wife of Plaintiff, Corey Twigg.

61. As a result of the injuries suffered by her husband, Plaintiff, Lori Twigg, has and will in the future suffer the loss and deprivations of the usual services, society and consortium of her husband and has been required to provide special services and care to him.

## FIFTH COUNT—

## PUNITIVE DAMAGES

62. Plaintiffs incorporate by reference all prior allegations of this Complaint the same as if fully set forth hereinafter.

63. Defendants continued to manufacture and sell the Polyethylene safety net and Collegiate L-Screen with knowledge and information that the product was defective and unreasonably unsafe. Defendants were aware of the probable consequences of the dangerous and defective Polyethylene safety netting material and Collegiate L-Screen, including the risk of degradation and fraying to the net caused by heat could allow a baseball to rip through the netting and cause serious injury, such as suffered by Plaintiff Corey Twigg. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with conscious indifference, indifference to, and/or flagrant disregard of, the safety of those persons who might foreseeably have been harmed by the Polyethylene safety netting material and Collegiate L-Screen products, including Plaintiff, justifying the imposition of punitive damages.

WHEREFORE, as a result of the acts and omissions and conduct of Defendants set forth herein, Plaintiffs Corey Twigg and Lori Twigg are entitled to recover for his personal injuries; past, present, and future medical and related expenses; past, present, and future lost wages; past, present and future loss of earning capacity; and past, present and future mental and physical pain and suffering; and Plaintiffs are entitled to punitive damages in an amount sufficient to punish, penalize and deter Defendants from such conduct.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.

N.W. MATTIACCI LAW, LLC

BY: */s/ Nicholas W. Mattiacci*

Nicholas W. Mattiacci, Esq., L.L.M.
804 West Avenue
Jenkintown, PA 19046
(215) 690-4201 (office)
(267) 202-5452 (facsimile)
E-mail: nwm@mattilaw.com
Attorney for Plaintiffs

## VERIFICATION

Nicholas W. Mattiacci, Esq. states that he is the Attorney for the Plaintiff herein, that he is acquainted with the facts set forth in the foregoing pleading, that the same are true and correct to the best of his information, knowledge and belief and that this statement is made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsifications to authorities.

*/s/ Nicholas W. Mattiacci*
NICHOLAS W. MATTIACCI, Esq., L.L.M.
ATTORNEY FOR PLAINTIFF
