**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **COREY TWIGG, et al.,** : **CIVIL ACTION**<br>           **Plaintiffs,** :<br>   :<br>   **v.** :<br>   : **NO. 2:21-CV-00768-MSG**<br>**VARSITY BRANDS HOLDING CO.,** :<br>**INC., et al.,** :<br>           **Defendants.** : | |

**DEFENDANTS VARSITY BRANDS HOLDING COMPANY, INC., BSN SPORTS, LLC, AND GARWARE TECHNICAL FIBRES LTD.'S BRIEF IN SUPPORT OF THEIR JOINT MOTION TO TRANSFER VENUE**

The defendants, Varsity Brands Holding, Company, Inc. ("Varsity"), BSN Sports, LLC ("BSN"), and Garware Technical Fibres Ltd.("Garware") jointly move the Court to transfer this case to the Middle District of Pennsylvania because the safety screen at issue was purchased in and delivered in the Middle District, the accident occurred in the Middle District, most witnesses reside or work in the Middle District, and because the plaintiffs reside in the Middle District. In contrast, the only connections to the Eastern District are the offices of the plaintiffs' counsel and the location of one out of three subsequent medical facilities that saw Mr. Twigg. Therefore, the Middle District of Pennsylvania is a proper and more convenient venue under 28 U.S.C. § 1404(a) and the doctrine of forum *non conveniens*.

**I.   INTRODUCTION**

The plaintiffs bring this products liability claim arising out of Mr. Twigg's use of a baseball pitching screen. [Doc. 1, ¶¶ 18-39]. The Montoursville Area School District bought the screen from BSN Sports, LLC. [*Id.* at ¶ 20]. Varsity is BSN's holding company. [Doc. 9]. Garware is alleged to have manufactured or supplied the screen's netting. [Doc. 1, ¶ 10].

According to his Complaint, the Montoursville Area School District employed Mr. Twigg as a sixth-grade teacher and assistant baseball coach for Montoursville High School in 2019. [Doc. 1, ¶ 19]. Mr. Twigg alleges that on March 10, 2019, he was throwing baseballs during batting practice inside of a Montoursville High School gym. [*Id.* at ¶¶ 19-20]. Mr. Twigg claims that during this batting practice, he was sitting behind the safety screen when a batter hit a ball that went through the polyethylene net and struck him in the face. [*Id.*]. Mr. and Mrs. Twigg sued alleging, *inter alia*, that the safety screen and polyethylene net was defective or unsafe in various ways. [*Id.* at 8-12].

This case has virtually no connection to the Eastern District of Pennsylvania. The accident did not occur in the Eastern District. [Doc. 1, ¶ 18]. None of the parties—including the plaintiffs—are located in or reside in the Eastern District. [*Id.* at ¶¶ 4-7 and 10]. Likewise, most of the potential fact and expert witnesses are known or believed to be located outside of the Eastern District. [Docs. 31-32]. Indeed, most of the potential witnesses are known or believed to be located in the Middle District or in effectively neutral locations such as Arizona, Michigan, and New Jersey.

Because there is insufficient connection between this venue and lawsuit, the Middle District of Pennsylvania is the proper venue.

## II. ARGUMENT

**A. Transfer under 28 U.S.C. § 1404(a).**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Courts are not limited to considering only the convenience of the parties and witnesses and the interest of justice when ruling on a § 1404(a) motion. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (finding that courts are to consider in their broad discretion "*all*

*relevant factors* to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.") (emphasis added). Both "private interests factors" and "public interest factors" are considered. *Id.* All factors favor transfer to the Middle District of Pennsylvania.

**B.   Venue is proper in the Middle District of Pennsylvania.**

The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district. If the first prong of the inquiry is satisfied, courts then determine whether a transfer would be in the interests of justice. *Jumara*, 55 F.3d at 879.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this lawsuit occurred in the Middle District. That is, the purchase and sale of the safety screen, Mr. Twigg's accident, and most of the medical treatment provided to Mr. Twigg all occurred in Lycoming and Montour counties, which fall within the Middle District. [Doc. 1, ¶ 18]; [Docs. 31-32]; 28 U.S.C. § 118(b). Therefore, venue is proper in the Middle District of Pennsylvania.

**C.   The private interest factors support transfer to the Middle District of Pennsylvania.**

Private interest factors generally considered by courts include: (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises, if applicable; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive.[1]

---

[1] *Id.*; *see* Saint-Gobain Calmar, Inc. v. Nat. Prods. Corp., 230 F. Supp. 2d 655, 658 (E.D. Pa. 2002); *see also*, Murphy v. Trans Union, LLC, No. 12-499, 2012 WL 3536322, at *2 (E.D. Pa. Aug, 15, 2012); Jackson v. Equifax Info. Servs., LLC, No. 3:CV-14-015, 2014 WL 808090, at *3 (M.D. Pa. Feb. 28, 2014); *see also* Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 840-41 (W.D. Pa. 2006) (internal citations omitted).

> **i. The plaintiffs' choice of forum is given less deference because the Eastern District is neither their home, nor the location where most of the relevant events occurred.**

A plaintiff's choice of forum is usually entitled to substantial deference unless the selected venue is neither her home, nor the location where the events giving rise to the lawsuit occurred. In such cases, the plaintiff must make a "strong showing of convenience" for her choice to be given deference. *Harris v. Nat'l Railroad Passenger Corp.*, 979 F. Supp. 1052, 1053 (E.D. Pa. 1997) ("the plaintiff's choice of forum is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based."); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013) ("the plaintiff's choice is given less deference when none of the operative facts occurred there.") (internal citations omitted); *Gunder v. CSX Transp.*, No. 08-cv-6083, 2009 WL 2004377, at *2 (E.D. Pa. July 8, 2009) ("[w]hen the plaintiff is not a resident of the chosen forum, he must make a 'strong showing of convenience' in order for his choice to be given deference.") (citing *Windt v. Qwest Comms. Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008); *Darden v. Trans Union*, LLC, No. 11-6310, 2012 WL 1071227, at *2 (E.D. Pa. March 30, 2012) (forum selection clause given less weight because the plaintiff did not reside in the forum and "virtually none of the events giving rise to the litigation took place in this district."); *Nat'l Mortg. Network, Inc. v. Home Equity Ctrs.*, Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988) (transferring action and noting that plaintiff's choice is given less weight where none of the operative facts of the action occur in the forum selected by the plaintiff).

For unknown reasons, the plaintiffs sued in a district which has minimal connection to the parties, facts, or witnesses. At the time of the accident, Mr. Twigg was employed by Montoursville Area School District, which has a district office located at 50 N Arch Street, Montoursville, Pennsylvania 17754. [Doc. 1, ¶ 19]. Mr. Twigg's accident occurred "at or near [Montoursville High School] 700 Mulberry Street, Montoursville, Pennsylvania 17754." [*Id.* at ¶ 18]. The contract

for the purchase and sale of the safety screen at issue was entered into by Montoursville High School and BSN (Dallas, Texas). (**Exhibit 1**, true and correct copies of the Invoice and Order Confirmation for the safety screen, bates labeled as BSN-00519, BSN-00538). And, according to their Complaint, the plaintiffs reside at 135 Sydney Street, Montoursville, Pennsylvania 17754. [Doc. 1, ¶¶ 4-5].

In sum, the school district's office, Montoursville High School, and the plaintiffs' residence are all in Lycoming County, Pennsylvania, about three hours and 170 driving miles away from this Court and firmly within the Middle District. 28 U.S.C. § 118(b); (**Exhibit 2**, Google Maps directions from the school district's office, high school, and the plaintiffs' residence to this Court). FED. R. EVID. 201, 807.

Similarly, most of the medical providers that treated Mr. Twigg are in the Middle District of Pennsylvania. According to the plaintiffs' Rule 26 disclosures, [Doc. 31 at 1-2], Mr. Twigg received medical treatment or care at:

- Muncy Valley Hospital Emergency Room, located at 215 E. Water Street, Muncy, Pennsylvania 17756 (Lycoming County);

- Geisinger Medical Center/Eye Institute, located at 100 N. Academy Avenue, Danville, Pennsylvania 17822 (Montour County); and

- WillsEye Hospital, located at 840 Walnut Street, Philadelphia, Pennsylvania 19107.

WillsEye Hospital is one of only two associations that this lawsuit has with the Eastern District.[2]

---

[2] The other connection to the Eastern District is the plaintiffs' counsel's office in Jenkintown, Pennsylvania 19046, and "the convenience of counsel is not a factor to be considered" in deciding a motion to transfer. *See* Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973); Jordan v. Delaware & Hudson Railway Co., 590 F. Supp. 997, 998 (E.D. Pa. 1984); *see also* Mullen v. Norfolk S. Ry. Co., No. 13-6348, 2014 WL 1370119, at *9 (E.D. Pa. Apr. 8, 2014) (transferring case where operative facts occurred in another district, plaintiff was a resident of that district, and the only connection to the Eastern District of Pennsylvania was plaintiff's attorney).

As such, this factor weighs heavily in favor of transfer because none of the events giving rise to this litigation occurred in the Eastern District of Pennsylvania, and the plaintiffs' choice of this forum is entitled to little or no deference.

### ii. The Middle District is where the relative ease of access to sources of proof exists.

The relative ease of access to sources of proof also strongly supports transfer to the Middle District of Pennsylvania because the accident occurred in the Middle District and because numerous deponents and sources of relevant documents are in the Middle District.

The plaintiffs reside in Lycoming County, the accident occurred in Lycoming County, and most of the medical treatment was provided in Lycoming and Montour counties. Moreover, upon information and belief, most of the people with discoverable information related to this lawsuit listed in the plaintiffs' Rule 26 disclosures are in the Middle District or in neutral places outside of the Eastern District. [Docs. 31 and 32].

### iii. The availability of compulsory process for attendance of unwilling witnesses and costs of attendance of willing witnesses supports transferring this case to the Middle District.

The ability to compel witness attendance strongly supports transfer to the Middle District of Pennsylvania. "[A] subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45. As noted above, the accident happened at Montoursville High School and most of the people identified by the plaintiffs in their Rule 26 disclosures are believed to reside or be employed—at the time of the accident, currently, or both—in counties inside the Middle District:

| 1. | Joel Verrico – baseball player at the time of the accident. | Lycoming County |
| 2. | Maddix Delana – baseball player at the time of the accident. | Lycoming County |
| 3. | David Taormina – Principal of Montoursville High School. | Lycoming County |

| 4. | Jessica Reich – Office Manager at Montoursville High School. | Lycoming County |
|---|---|---|
| 5. | Brandy Smith – Business Manager at Montoursville High School. | Lycoming County |
| 6. | Matt Yonkin and his son – wrestling coach present in adjoining weight room at the time of the accident. | Lycoming County |
| 7. | Physicians and staff at Muncy Valley Hospital Emergency Room. | Lycoming County |
| 8. | Physicians and staff at Geisinger Medical Center. | Montour County |
| 9. | Physicians and staff at Geisinger Eye Institute. | Montour County |
| 10. | Physicians and staff at WillsEye Hospital. | Philadelphia County |
| 11. | Evelyn Wynne – former Athletic Director of Montoursville High School. | Arizona |
| 12. | Jaxon Delena – baseball player at the time of the accident. | New Jersey |
| 13. | Cameron Wood – baseball player at the time of the accident. | Michigan |
| 14. | Designated representatives of Varsity and BSN. | Texas |
| 15. | Designated representatives of Garware Technical Fibers, Ltd. | India |

The Middle District is where: (a) the safety screen was purchased from and delivered to; (b) the accident occurred; (c) most of the anticipated witnesses are located; and (d) the plaintiffs reside. [Docs. 1, 31, and 32]. As such, subpoena power to call any unwilling witnesses exists in the Middle District of Pennsylvania for most of the anticipated witnesses.

Equally compelling are the costs associated with obtaining attendance of the willing witnesses. These costs will be unnecessarily burdensome if this case remains in the Eastern District. Setting aside the plaintiffs, more than ten witnesses, including minor children, would have to travel about three hours or more from Lycoming and Montour counties to this Court. (Exh. 2). The cost of attendance and burden on each of these individuals would be far less in the Middle District of Pennsylvania. Indeed, the Middle District's Williamsport court location at 240 West Third Street, Suite 218, Williamsport, Pennsylvania 17701 is a mere 5.2 miles away from the scene

of the accident at Montoursville High School. (**Exhibit 3**, Google Maps directions from the high school to the Williamsport court location). FED. R. EVID. 201, 807.

Accordingly, this factor strongly supports transfer to the Middle District of Pennsylvania.

### iv. There is a possibility of needing to view the premises at issue, which weighs in favor of transfer.

Mr. Twigg's accident occurred at Montoursville High School, which is located in Lycoming County. [Doc. 1, ¶ 18]. It is foreseeable that a site visit may be beneficial to all involved to understand the prevailing conditions, environment, and circumstances relating to the accident. Useful facts may include, among other things, exact measurements of where the actors and devices were situated, the locations of witnesses and objects or structures affecting their view, and the screen's storage conditions. This information would be more quickly, easily, and conveniently obtained if this case were transferred to the Middle District of Pennsylvania.

### v. Transferring this case to the Middle District of Pennsylvania will make trial of this case relatively easy, expeditious, and inexpensive.

Other practical problems weigh in favor of transfer to the Middle District of Pennsylvania. The "practical considerations that make trial of a case easy, expeditious and inexpensive include whether discovery has been substantially completed and the state of pre-trial preparation." *Wright v. Aventis Pasteur, Inc.*, 905 A.2d 544, 552 (Pa. Super. 2006). Discovery in this matter is in its infancy. The Rule 16 conference was held on April 5, 2022; and, to date, only one set of discovery was exchanged: BSN's discovery requests to the plaintiffs regarding venue.[3]

The majority of fact witnesses whom the defense would likely depose (and possibly compel

---

[3] Varsity and BSN served discovery requests to the plaintiffs on April 18, 2022. These discovery requests directly relate to this joint motion. The plaintiffs' deadline to serve their responses expired on May 18, 2022. However, the plaintiffs did not serve their responses on that date. Varsity and BSN's counsel inquired about the status of the plaintiffs' discovery responses with their counsel via email on May 19, 2022. As of the date of this filing, Varsity and BSN's counsel has not received a response. Therefore, Varsity and BSN respectfully reserve the right to supplement this joint motion once the plaintiffs' discovery responses are received.

to testify at trial) reside or work in Lycoming and Montour counties, outside of this Court's 100-mile subpoena range. Even if each of these witnesses is willing to testify at deposition and trial, there is nothing easy, expeditious, or inexpensive about requiring these witnesses, including minors, to travel about three hours to give their testimony. *Darden v. Trans Union, LLC*, No. 11-6310, 2012 WL 1071227 at *3 (E.D. Pa. Mar. 30, 2012) (recognizing that the "location of and access to witnesses" should be considered when evaluating the practical problems that make trial of a case easy, expeditious, and inexpensive).

**D. The public interest factors also support transfer to the Middle District of Pennsylvania.**

The Middle District of Pennsylvania has the strongest public interest in this case. The factors involved in an examination of public interest include "the relative congestion of court dockets, choice of law considerations, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation." *Cain v. De Donatis*, 683 F. Supp. 510, 511 (E.D. Pa. 1988).

   **i. This case creates unnecessary congestion in the Eastern District.**

This District has no particular interest in deciding this case because it involves a controversy local to the Middle District of Pennsylvania that should be decided by a court and jurors in the Middle District of Pennsylvania. The plaintiffs reside in the Middle District. The accident at issue in this lawsuit occurred in the Middle District. And, most of the potential witnesses reside or work in the Middle District, including medical professionals who treated Mr. Twigg. This case is likely to require at least one week to try. The plaintiffs filed this lawsuit over a year ago, and the Court already had to place it in the Civil Suspense File in June 2021 because the plaintiffs did not serve Garware until September 2021. This Court should not spend more of its resources or burden its docket and jurors with adjudicating a case with insufficient connection to the Eastern District.

The most recent Civil Federal Judicial Caseload Statistics indicate that transferring this case is best for judicial economy. As of March 31, 2021, a total of 8,647 civil cases were pending in the Eastern District, compared to 2,886 civil cases pending in the Middle District. (**Exhibit 4**). FED. R. EVID. 201. From March 31, 2020 to March 31, 2021, 6,933 cases were commenced in the Eastern District, as opposed to 2,621 cases commenced in the Middle District. Varsity, BSN, and Garware respectfully defer to the Court regarding these figures and its judicial administration.[4] But, these statistics do indicate that allowing this case to move forward in this Court will add unnecessary congestion in the Eastern District.

   ii. **The community served by the Eastern District should not be subject to jury duty in a case that has deficient connection to the Eastern District.**

There is virtually no relation between the residents of the Eastern District and this case because the safety screen was purchased in and delivered in the Middle District; the plaintiffs reside in the Middle District; the accident occurred in the Middle District; and most of the potential key witnesses are located in the Middle District.

The only associations to the Eastern District are: (1) the plaintiffs' counsel is in Jenkintown; and (2) Mr. Twigg visited WillsEye Hospital. As noted above, the convenience of plaintiffs' counsel is not to be considered for purposes of deciding on this motion. The extent of Mr. Twigg's experience at WillsEye Hospital is currently unknown.[5] Even so, after the accident, Mr. Twigg was immediately treated at a medical facility in the Middle District: Muncy Valley Hospital Emergency Room. Moreover, according to Mr. Twigg, he was also treated by medical professionals at Geisinger Medical Center/Eye Institute – located in Montour County. [Docs. 31

---

[4] Varsity, BSN, and Garware also recognize there are fewer judges in the Middle District and that those judges have more pending cases per judge compared to the Eastern District. The Eastern District's efficiency is undeniable. But, even setting aside the subpoena range, additional time and resources may be required to accommodate numerous witnesses given their ages and locations in relation to this Court.

[5] The plaintiffs' responses, when received, to Varsity and BSN's discovery requests should address this.

and 32]. Thus, at minimum, there are more medical providers with relevant information to this case in the Middle District of Pennsylvania. *See Leatherman v. Cabot Oil & Gas Corp.*, No. 12-3783, 2013 WL 1285491, at *4 (E.D. Pa. Mar. 29, 2013) (local interests weigh in favor of transfer where the alleged injuries are suffered in another district).

It is both unduly burdensome and unfair to subject this District's residents to jury duty for a case that has effectively no connection to their community. This Court's system should not be burdened by a week-long dispute that is directly connected to the Middle District of Pennsylvania; especially when transfer to the Middle District of Pennsylvania will be more convenient for all involved as there is a court location in Williamsport that is ten minutes away from the scene of the accident.

Accordingly, both justice and the convenience of the parties and witnesses demand that this action be heard in the Middle District of Pennsylvania.

### III.  CONCLUSION

For these reasons, Varsity Brands Holding Company, Inc., BSN Sports, LLC, and Garware Technical Fibres Ltd., respectfully request this Joint Motion to Transfer Venue be granted and this case be transferred to the United States District Court for the Middle District of Pennsylvania.

[Signature Blocks on Next Page]

Respectfully submitted,

| | |
|---|---|
| **WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP** | **SWEENEY & SHEEHAN** |

By: *s/ M. Susan Toth*

 John T. Donovan, Esquire
 M. Susan Toth, Esquire
 Pa. ID No.:  66494/208174
 Two Commerce Square, Suite 3100
 2000 Market Street
 Philadelphia, PA, 19103
 215-627-6900 (phone)
 215-627-2665 (facsimile)
 john.donovan@wilsonelser.com
 susan.toth@wilsonelser.com

*Attorneys for Defendant,*
*Garware Technical Fibres Ltd.*

By: */s/ J. Michael Kunsch*

 **J. Michael Kunsch**
 Identification No. PA 61922
 1515 Market Street, Suite 1900
 Philadelphia, Pennsylvania 19102
 Telephone: (215) 563-9811
 Facsimile:  (215) 557-0999
 michael.kunsch@sweeneyfirm.com

**ATTORNEY FOR DEFENDANTS**
**VARSITY BRANDS HOLDING**
**COMPANY, INC. and**
**BSN SPORTS, LLC**

AND

**AKERMAN LLP**

By: */s/ Joel W. Mohrman*

 **Joel W. Mohrman**
 Texas Bar No.: 14253500
 joel.mohrman@akerman.com
 *Admitted Pro Hac Vice*
 **Andy Cao**
 Texas Bar No.: 24031910
 andy.cao@akerman.com
 *Admitted Pro Hac Vice*
 1300 Post Oak Blvd., Suite 2300
 Houston, Texas 77056
 Telephone: (713) 623-0887

**ATTORNEYS FOR DEFENDANTS**
**VARSITY BRANDS HOLDING**
**COMPANY, INC. and**
**BSN SPORTS, LLC**