**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **COREY TWIGG AND LORI TWIGG, HUSBAND AND WIFE,** | **Civil Action** |
| *Plaintiffs*, | **No. 21-cv-00768** |
| *v.* | |
| **VARSITY BRANDS HOLDING CO., INC.** *et al.*, | |
| *Defendants*. | |

<u>**MEMORANDUM OPINION**</u>

**GOLDBERG, J.**                                                                                    **January 12, 2023**

In this products liability case, Plaintiffs Corey and Lori Twigg have sued Defendants Varsity Brands Holding Co., Inc., BSN Sports, Inc., Sport Supply Group, Inc., Spartan Athletic Company, and Garware Technical Fibers, Ltd. d/b/a Gold Medal Athletic Products (collectively, "Defendants") for alleged manufacturing and design defects. Plaintiff Corey Twigg alleges that he was seated behind the batting cages at an indoor batting practice when a baseball ripped through the safety netting of a cage and hit him directly in the eye, causing permanent injuries. Defendants have moved to transfer the case to the Middle District of Pennsylvania, which is where the Plaintiffs reside, where the incident occurred, and where a majority of the witnesses are located. For the reasons set forth below, I will grant the motion and transfer the case to the Middle District of Pennsylvania.

## I.      <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Except as otherwise noted, the following pertinent facts are derived from Plaintiffs' Complaint:

-   Plaintiff Corey Twigg now resides, and did reside at the time of the alleged injury, in Montoursville, Pennsylvania, which is in the Middle District.

1

- Defendants Varsity Brands Holding Co., Inc. and BSN Sports Inc. are factory direct suppliers of athletic and sporting equipment and are incorporated and have their principal places of business in Texas.  According to Plaintiffs' brief, BSN maintains offices in the Eastern District.

- Defendant Sport Supply Group Inc. is a marketing company that advertises athletic and sporting equipment.  It is incorporated and has its principal place of business in Texas.

- Defendant Spartan Athletic Company is a limited liability company which supplies sports and athletic equipment. It is registered and domiciled in Pennsylvania, with an address in Audubon, Pennsylvania.

- Defendant Garware Technical Fibers Ltd. d/b/a Gold Medal Athletic Products is a manufacturer of athletic products and equipment and is located in India.

- Defendants manufactured, designed, sold, and/or distributed safety nets and L-screens intended for use during baseball batting practice. Defendants contracted with Montoursville Area School District in the Middle District to supply such safety nets and L-screens.

- At the time of the incident, Plaintiff Corey Twigg was employed at Montoursville Area High School in the Middle District as a sixth-grade teacher and assistant baseball coach.

- On March 10, 2019, Mr. Twigg was throwing indoor batting practice at an auxiliary gym in Montoursville while seated behind an L-screen covered with safety netting, which was supplied by Defendants, when a baseball ripped through the net and struck him in the right eye. This injury necessitated that Mr. Twigg's eye be surgically removed and caused him additional physical and emotional trauma.

- According to Plaintiffs' brief, Mr. Twigg was initially treated at Muncy Valley Hospital Emergency Room in the Middle District of Pennsylvania following his injury.  His first eye operation occurred at Geisinger Medical Center/Eye Institute in the Middle District of Pennsylvania.  Thereafter, his medical treatment, including two additional eye surgeries, took place at Wills Eye Hospital locations in the Eastern District of Pennsylvania, where he currently maintains his care.

- Plaintiffs bring strict liability claims for manufacturing and design defects, as well as failure to warn.  They additionally bring claims for negligence, loss of consortium, and punitive damages.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district

"where it might have been brought" if this transfer is "for the convenience of parties and witnesses"

and "in the interest of justice."  28 U.S.C. § 1404(a); see also In re Genentech, Inc., 566 F.3d 1338,

2

1341–42 (Fed. Cir. 2009).  The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–878 (3d Cir. 1995). The party seeking transfer bears the burden of proving that transfer is proper.  Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp., 230 F. Supp. 2d 655, 658 (E.D. Pa. 2002) (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973)).

Analysis of a request for a § 1404(a) transfer has two components.  First, both the original venue and the requested venue must be proper.  Jumara, 55 F.3d at 879.   Venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which a substantial part of the property that is the subject of the action is situated.  28 U.S.C. § 1391.  A business entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  Id. § 1391(c)(2); see also Johnson v. Equifax Info. Servs., LLC, No. 17-cv-066, 2017 WL 2779568, at *2 (E.D. Pa. June 27, 2017).

Second, the purpose of allowing § 1404(a) transfers is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Mosaid Techs., Inc. v. Sony Ericsson Mobile Commc'ns (USA), Inc., 885 F. Supp. 2d 720, 723 (D. Del. 2012) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (further quotations omitted)).   Accordingly, the court must undertake a balancing test comprised of various public and private interest factors. Jumara, 55 F.3d at 879.   Analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case." Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted).  The court's discretion is broad in deciding whether to transfer.  Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450,

458–59 (E.D. Pa. 2013).   Under <u>Jumara</u>, the court must consider numerous private interests, including: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. 55 F.3d at 879.

The court must also weigh several public interests including: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) considerations of administrative difficulty resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  <u>Id.</u>

## III.   <u>DISCUSSION</u>

All Defendants jointly move to transfer this case, pursuant to 28 U.S.C. §1404(a), to the United States District Court for the Middle District of Pennsylvania.  For the following reasons, I find transfer to be warranted.

### A.   **Proper Venue**

As an initial matter, I must determine whether venue is proper in both the current forum— the Eastern District of Pennsylvania—and the proposed transferee district—the Middle District of Pennsylvania.   Defendants do not contest that venue is proper in the Eastern District of Pennsylvania (the current forum), so this element is satisfied.

With respect to the proposed transferee district, venue is proper in the Middle District of Pennsylvania because the product's alleged failure to perform as intended and Plaintiff's resulting injury which gave rise to this claim occurred in Lycoming County, which is within the Middle District. 28 U.S.C. § 1391(b)(1); <u>id.</u> § 118(b).

**B.    The <u>Jumara</u> Factors**

   1.    <u>Plaintiffs' Forum Preference</u>

The <u>Jumara</u> analysis begins with an examination of the plaintiff's choice of venue where the suit was originally brought.  As a general rule, a plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly."  <u>In re Amkor Tech., Inc. v. Sec. Litig.</u>, No. 06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting <u>Weber v. Basic Comfort, Inc.</u>, 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)).  However, a plaintiff's choice of forum is given less weight when he chooses a forum that is neither: (1) his home forum; nor (2) the forum where the events giving rise to the lawsuit occurred.  <u>Gore v. Stryker Corp.</u>, No. 09-cv-2987, 2010 WL 3069653, at *3 (E.D. Pa. Aug. 4, 2010).  In that case, a plaintiff must make a "strong showing of convenience" in his original choice.  <u>Id.</u>

In this case, Plaintiffs chose to bring this action in the Eastern District of Pennsylvania, which is not their home district nor the forum where the incidents giving rise to the lawsuit occurred.  Nonetheless, Plaintiffs assert that the Eastern District is a convenient forum because a majority of Mr. Twigg's treating doctors, including the specialist treating surgeon, nurses, and hospital personnel, as well as his medical records, are all located in the Eastern District.  I find that this does not constitute a "strong showing of convenience."  First, Plaintiffs acknowledge that while Mr. Twigg has undergone some treatment in the Eastern District, he was initially treated and underwent his first eye operation in the Middle District.  Moreover, Plaintiffs admit elsewhere in their brief that advances in technology minimize the burden of producing discovery between the Eastern District and Middle District; therefore, the location of medical records in either district does not contribute to a showing of convenience in any meaningful way.

   To further support the convenience of their chosen forum, Plaintiffs assert that the potential burden of producing witnesses in the Eastern District is negligible because all witnesses

are located less than an hour away from the Eastern District's boundary.  This is essentially an argument that the Eastern District is *not inconvenient*; it does not contribute enough force to create a strong showing of *convenience* in the Eastern District.  Given that Plaintiffs' chosen forum is not their home district or where the events giving rise to their claim occurred, I find that Plaintiffs' forum preference weighs only slightly against transfer.

      2.      <u>Defendants' Preferred Forum and Where Plaintiffs' Claims Arose</u>

The second and third factors—the defendant's forum choice and where the Plaintiffs' claims arose—weigh in favor of transfer.  The defendant's forum choice is "entitled to considerably less weight than [the plaintiff's], as the purpose of a venue transfer is not to shift inconvenience from one party to another."  <u>EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc.</u>, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted).  However, here, Defendants' forum choice is also the forum where Plaintiffs' claims arose.  The forum where a plaintiff's claims arose is the forum that is "the center of gravity of the dispute, its events and transactions."  <u>Park Inn Int'l, L.L.C. v. Mody Enters., Inc.</u>, 105 F. Supp. 2d 370, 377 (D.N.J. 2000).  The "center of gravity" in this case is the Middle District, as this is where the product's alleged failure to perform as intended and Mr. Twigg's resulting injury both occurred.

Because the primary events giving rise to this action occurred in Lycoming County, I conclude that the Middle District of Pennsylvania is the center of gravity of this dispute, its events, and transactions.  These two factors, thus, weigh in favor of transfer.

      3.      <u>Convenience of the Parties and Party Witnesses</u>

I next consider "the convenience of the parties as indicated by their relative physical and financial condition."  <u>Jumara</u>, 55 F.3d at 879.  Neither party has argued that one venue or another would be more convenient for the parties themselves, and none of the parties reside in their preferred venue.  Therefore, this factor is neutral and does not weigh for or against transfer.

4.      Convenience of Non-Party Witnesses

Defendants offer a list of persons identified by Plaintiffs as potential witnesses in their Rule 26 disclosures. These potential witnesses include two baseball players, the principal, an office manager, the wrestling coach and his son, and a business manager at Montoursville High School in the Middle District, and physicians and staff at Muncy Valley Hospital and Geisinger Medical Center/Eye Institute in the Middle District of Pennsylvania.  All of these witnesses are believed to be residents of or employed in the Middle District.  The list also includes the physicians and staff at Wills Eye Hospital located in Philadelphia County in the Eastern District.  Finally, individuals residing in New Jersey, Michigan, Texas, and India are listed.  Plaintiffs do not dispute the accuracy of this list.

Among those believed to be residing or employed in Pennsylvania, only the Wills Eye Hospital physicians and staff are located in the Eastern District.  Several potential fact witnesses as well as treating medical personnel at multiple health care facilities all reside in the Middle District.  Plaintiffs contend that the potential burden of producing witnesses in the Eastern District "is negligible given the relatively short distance between the two forums." (Pl. Br. at p. 6).  I agree that the proximity of the two districts somewhat curtails the inconvenience to non-party witnesses, but the burden is not negligible.  The fact remains that more witnesses are located in the Middle District than in the Eastern District, and those witnesses would be forced to travel a greater distance to testify if this case is not transferred.  Plaintiffs also note that the relevant importance of proposed witnesses, not just the sheer number, should be considered, and that Mr. Twigg's treating physicians in the Eastern District "will provide critical testimony . . . regarding [Mr. Twigg's] surgical procedures, the nature and extent of his injuries sustained and prognosis." (Pl. Br. at p. 8).  But as Defendants note in their reply brief, this is not a medical malpractice action, and there is no allegation that Mr. Twigg's treatment in the Eastern District is somehow at issue.  Ultimately, the

majority of the fact witnesses who witnessed the accident itself and its immediate aftermath reside in the Middle District.  Accordingly, I conclude that this factor weighs in favor of transfer.

       5.     <u>Location of Books and Records</u>

The final private factor is the location of books and records.  Generally, this factor is given little weight "as technological advances 'have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded ... and have lowered the cost of moving that information from one place to another.'"  <u>Papbst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.</u>, 126 F. Supp. 3d 430, 443 (D. Del. 2015) (quoting <u>Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.</u>, No. 01-cv-199, 2001 WL 1617186, at *3 (D. Del. 2015)).

In this case, books and records are likely to be located in both venues, so I decline to give weight to this factor.

       6.     <u>The Public Interests</u>

I find that several of the public interest factors outlined in <u>Jumara</u> also weigh in favor of transfer.  With regard to practical considerations, discovery in this case is ongoing and transfer would not create inefficiency.  The parties have one month of fact discovery remaining, and have several depositions left to complete.  They also have yet to begin expert discovery.  In sum, the current state of pre-trial preparation does not weigh against transfer.  In addition, as discussed above, most of the potential witnesses are located in the Middle District, and transfer to the Middle District would allow for a more expeditious trial.

Another relevant public interest factor is the local interest in deciding controversies at home. <u>See</u> <u>Murphy v. Trans Union, LLC</u>, No. 12-cv-499, 2012 WL 3536322, at *6 (E.D. Pa. 2012). In this case, the alleged product failure and resulting injury occurred in the Middle District of Pennsylvania.  Additionally, the allegedly defective product was sold to a public school in the

Middle District for use by students and school employees, and the Plaintiffs are residents of the Middle District.  This case can therefore be fairly characterized as a localized controversy within the Middle District.  Accordingly, I conclude that the Middle District of Pennsylvania would likely have an interest in deciding this controversy and this factor weighs in favor of transfer.

The other public interest factors have no bearing on my analysis.  Neither party disputes that a judgment rendered in either district would be enforceable.  Neither party argues that the public policies of either forum affect the suitability of transfer.  And although this is a diversity action involving state law, both potential venues are in Pennsylvania and familiarity with Pennsylvania law is not an issue.

**IV.    <u>CONCLUSION</u>**

I find that Defendants have clearly demonstrated that this case could have been brought in the Middle District of Pennsylvania and that the balance of the <u>Jumara</u> factors weighs in favor of transfer to that court.  Accordingly, I will grant Defendants' Motion to Transfer this matter to the United States District Court for the Middle District of Pennsylvania.

An appropriate order follows.